566 So.2d 568 (1990)
Denise LEFEBVRE, Petitioner,
v.
NORTH BROWARD HOSPITAL DISTRICT, d/b/A Broward General Medical Center, Respondent.
No. 90-1985.
District Court of Appeal of Florida, Fourth District.
August 22, 1990.
*569 Alan H. Schreiber, Public Defender, and Frank delaTorre, Asst. Public Defender, Fort Lauderdale, for petitioner.
Lynn Futch Cooney of Conrad, Scherer & James, Fort Lauderdale, for respondent.
PER CURIAM.
The trial court granted North Broward Hospital District's petition for declaratory relief, which sought authorization to terminate the nine and one-half-week pregnancy of Denise Lefebvre. Through the public defender, Ms. Lefebvre now seeks relief in this court pursuant to a petition for writ of mandamus and/or prohibition. We conclude that the matter should be treated as an appeal of a final order, see S.L.T. Warehouse Co. v. Webb, 304 So.2d 97 (Fla. 1974), and Skinner v. Skinner, 561 So.2d 260 (Fla. 1990), and reverse.
Denise Lefebvre has a history of mental illness, suffering from manic depression and psychosis. Her illness had been fairly well controlled as a result of her taking a medication called lithium, but it is believed that some time near the end of June, 1990, she stopped taking the medication because she suspected she might be pregnant. It is unknown whether Ms. Lefebvre took any lithium while pregnant. On July 3, 1990, Ms. Lefebvre was admitted to Broward General Medical Center (the Hospital), suffering from severe psychosis. No lithium has been administered to Ms. Lefebvre since her admission, due to the likely harmful effects that it will have on the fetus.
On July 10, 1990, the administrator of the Hospital filed a petition for involuntary placement pursuant to section 394.467, Florida Statutes (1989) (the Baker Act), seeking to have Ms. Lefebvre involuntarily retained at the Hospital for treatment. The petition was supported by two Hospital psychiatrists. A general master recommended approval of the petition following a hearing, and the trial court subsequently entered an order for involuntary placement. The court also appointed Ms. Lefebvre's father as her "guardian advocate."
On July 19, 1990, the Hospital filed a petition for declaratory relief, seeking authority to terminate Ms. Lefebvre's pregnancy. The petition was supported by the affidavit of a Hospital psychiatrist who opined inter alia that without the use of lithium Ms. Lefebvre was violent, abusive, aggressive and uncontrollable, and that it would be in the best interests of both Ms. Lefebvre and the fetus to terminate the pregnancy. The petition was also supported by a Hospital obstetrician, who opined inter alia that use of lithium during pregnancy would likely result in severe damage to the fetus. The petition was further supported by an affidavit of Ms. Lefebvre's father, who agreed that termination of the pregnancy would be in the best interests of Ms. Lefebvre and the fetus.
The trial court appointed an attorney ad litem to represent the fetus and heard testimony from several Hospital employees, *570 who confirmed that Ms. Lefebvre had refused to eat, threw food around her room, bit, scratched and spit at hospital employees, escaped from her restraints, busted through a wall and attempted to place pieces of plaster in her vagina and to eat her feces. The Hospital director of nursing did testify, however, that she had heard Ms. Lefebvre state that she had stopped taking the lithium because she suspected she was pregnant and didn't want the medication to hurt the baby, and that she wants to keep the baby. The guardian ad litem for the fetus testified that he favors termination of the pregnancy as it would be in the best interests of both Ms. Lefebvre and the fetus.
The trial court took judicial notice of the prior involuntary placement proceedings and authorized termination of the pregnancy as being in the best interests of both Ms. Lefebvre and the fetus, finding that Ms. Lefebvre was not capable of consenting or objecting to the termination due to her psychotic condition.
The trial court evidently reasoned that the proceedings it conducted in connection with the Hospital's petition for declaratory relief, in conjunction with the involuntary placement proceeding, was the equivalent of a chapter 744, Florida Statutes (1989), incompetency proceeding, and that the evidence justified a finding that Ms. Lefebvre was incompetent. The trial court also apparently reasoned that since Ms. Lefebvre's "guardian advocate" (her father) consented to termination of the pregnancy, and since the court found the termination to be in the best interests of Ms. Lefebvre and the fetus, termination could properly be ordered. We disagree.
It is true that section 394.467(3)(c), which deals with involuntary placement, provides that "[t]he court may adjudicate a person incompetent pursuant to the provisions of chapter 744 at the hearing on involuntary placement." We find, however, that such adjudication can occur only if all of the procedural safeguards of chapter 744 have been met during the involuntary placement proceeding; for the procedures required in order to adjudicate a person incompetent are more stringent than those required to involuntarily place an individual in a mental treatment facility.
For example, section 394.467(2), Florida Statutes (1989), provides that a patient may be involuntarily placed in a treatment facility, after notice and hearing, upon the recommendation (supported by the opinion of a psychiatrist and the second opinion of a clinical psychologist or another psychiatrist) of the administrator of the facility where the patient has been examined. Section 744.331(3)(a), however, provides that a three-member examining committee must be appointed when a petition for determination of incapacity has been filed, and that no member of the examining committee may be employed by any private or governmental agency that has custody of, or furnishes services to, the alleged incapacitated person.
In the instant case, all medical personnel who supported the petition for involuntary placement and who testified at the hearing on the Hospital's petition for declaratory relief, are employed by the Hospital, which is currently furnishing services to Ms. Lefebvre. Accordingly, although their testimony may support involuntary placement, it cannot justify an adjudication of incompetency.
Moreover, section 390.001(4) Florida Statutes (1989), provides that prior to terminating a pregnancy of a mental incompetent, the physician shall obtain the written consent of her court-appointed guardian. We conclude that the language "court-appointed guardian" in this section means a guardian appointed by the court pursuant to the provisions of chapter 744, not merely a "guardian advocate" appointed in connection with an involuntary proceeding.
Furthermore, section 744.3215(4)(e), Florida Statutes (1989), provides that without first obtaining specific authority from the court, as described in section 744.3725, even a guardian appointed pursuant to the provisions of chapter 744 may not consent on behalf of the ward to the performance of a sterilization or abortion procedure on the ward. Section 744.3725 provides that before the court may grant authority to a guardian to exercise any of the rights specified in section 744.3215(4), the court must, *571 inter alia: "[p]ersonally meet with the incapacitated person to obtain its own impression of the person's capacity, so as to afford the incapacitated person the full opportunity to express his personal views or desires with respect to the judicial proceeding and issue before the court."
In the instant case, the trial judge never personally met with Ms. Lefebvre. Accordingly, even if the court had complied with the requirements of chapter 744 in appointing a guardian for Ms. Lefebvre (which it did not), any consent to the termination of pregnancy by the guardian would not have been valid.
The public defender, on Ms. Lefebvre's behalf, suggests to this court that if the trial court applied the doctrine of "substituted judgment," it applied the doctrine incorrectly. We agree, because under that doctrine, which has been applied by courts when a patient is incompetent or when the court is unable to determine competency, the surrogate decision-maker must make a decision for the patient based not on a "best interests" or objective test, but pursuant to a subjective test; that is, on the basis of what choice the patient would make if he or she were competent to do so. See In re A.C., 573 A.2d 1235 (D.C. Cir.1990); John F. Kennedy Memorial Hospital, Inc. v. Bludworth, 452 So.2d 921 (Fla. 1984); In re Guardianship of Browning, 543 So.2d 258 (Fla. 2d DCA 1989). Here, clearly, the trial court applied a "best interests" tests rather than a subjective test.
However, we conclude that the "substituted judgment" doctrine is not applicable to this case. Since there are Florida statutes (sections 390.001(4), 744.331, 744.3215(4)(e), and 744.3725) which apply to the specific situation involved in this case, there is no need for recourse to the "substituted judgment" doctrine. Moreover, the cases which have applied that doctrine, unlike the present case, involve patients suffering from immediately life-threatening, terminal, or incurable medical conditions.
We conclude that the above-cited four statutes, rather than the "substituted judgment" doctrine, are applicable to this case. Also, we note that section 744.3725(5), which sets forth the procedures for extraordinary authority to be granted to a guardian to consent to an abortion for a ward, provides that the court, prior to granting the guardian authority to consent to an abortion, must be "persuaded by clear and convincing proof that the authority being requested is in the best interests of the incapacitated person." (Emphasis added).
Based on the foregoing we conclude that the trial court erred in authorizing termination of Ms. Lefebvre's pregnancy. Accordingly, we reverse the court's July 20, 1990, final order. Hereafter, if an adult person who is a resident of this state (see section 744.3201, Fla. Stat. (1989)) wishes to file a petition to determine the incapacity of Ms. Lefebvre, such person may do so. If Ms. Lefebvre is subsequently adjudicated incompetent and a guardian is appointed, that guardian may then attempt to obtain specific authority from the court, as described in section 744.3725, to consent to a termination of Ms. Lefebvre's pregnancy. See section 744.3215(4), Fla. Stat. (1989). We think it inappropriate for this court, however, to, as the public defender urges, direct anyone to initiate incompetency proceedings.
REVERSED.
DOWNEY, GUNTHER and GARRETT, JJ., concur.